J137-4230

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

E. Mishan & Sons, Inc.
and BHH LLC,

                    Plaintiffs,

          v.

RSA Group, LLC,
d/b/a As Seen On TV Pros,

                    Defendant.

Civil Action No. 1:20-cv-7523

**Jury Trial Demanded**

<u>**COMPLAINT**</u>

Plaintiff E. Mishan & Sons, Inc. ("Emson") and Plaintiff BHH LLC ("BHH") (collectively, "Plaintiffs"), by their attorneys, Notaro, Michalos & Zaccaria P.C., bring this action for trademark infringement, trademark counterfeiting, false designations of origin, false or misleading representation of fact, copyright infringement, trade dress infringement, unfair competition, passing off, and false advertising against Defendant RSA Group, LLC, d/b/a As Seen On TV Pros ("ASTV Pros").

<u>**Nature of the Action**</u>

1.      This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. (the "Lanham Act") for trademark infringement, trademark counterfeiting, trade dress infringement, false designations of origin, and false or misleading representation of fact; copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. § 1 *et seq.*; and

trade dress infringement, unfair competition, passing off and false advertising under New York law.

## Parties

2.    Plaintiff Emson is a corporation organized and existing under the laws of the State of New York with its principal place of business at 230 Fifth Avenue, Suite 800, New York, New York 10001.

3.    Plaintiff BHH is a corporation organized and existing under the laws of the State of New York with its principal place of business at 230 Fifth Avenue, Suite 800, New York, New York 10001.

4.    On information and belief, Defendant ASTV Pros is a corporation organized and existing under the laws of the State of Nebraska, having a principal office address at 10135 J Street, Omaha, Nebraska 68127.

## Jurisdiction and Venue

5.    This Court has original subject matter jurisdiction over the Lanham Act and Copyright Act claims in this action under 28 U.S.C. §§ 1331 and 1338(a).  This Court also has original subject matter jurisdiction over the Lanham Act claims in this action pursuant to 15 U.S.C. § 1121(a).  This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.    This Court has personal jurisdiction over ASTV Pros, because the claims asserted herein arose in this judicial district and/or because ASTV Pros transacts

business within this district and has committed infringing acts complained of hereinafter within this district, because ASTV Pros derives substantial revenue from interstate commerce and has committed acts of infringement and false or misleading representation of fact both within and without this district having injurious consequences within this district, and because ASTV Pros is otherwise within the jurisdiction of this Court.  ASTV Pros has purposefully availed itself of this forum by, among other things, offering to sell and selling, and causing others to use, offering to sell, and/or selling infringing products in the State of New York, including in this judicial district, and deriving revenue from such activities.

7.     Venue in this judicial district is proper under 28 U.S.C. § 1391.

## STATEMENT OF FACTS

### Facts Pertaining to Plaintiffs

8.     BHH owns the trademarks **BELL+HOWELL®** and **BELL+HOWELL®** (and Design).

9.     BHH has provided to Emson exclusive rights to use the **BELL+HOWELL®** and **BELL+HOWELL®** (and Design) marks on and in connection with consumer and household products, including the Emson products described herein.

10.     Emson markets and sells consumer products throughout the United States to wholesale customers and direct to consumers through print media, the Internet, and direct response television ("DRTV") advertising.

11.     Emson spends millions of dollars advertising its products using DRTV advertising on broadcast and cable television channels, nationally and locally, throughout the United States.

12.     DRTV advertising creates consumer product awareness that drives sales at the retail store level and through other distribution channels.

13.     Emson includes the logo ("As Seen On TV" logo) on its product packaging and on websites promoting its products.

14.     The "As Seen On TV" logo is used in the direct response advertising industry to signify advertising of a product via an infomercial on broadcast and cable television channels, and not through forms of non-television advertising.

15.     The "As Seen On TV" status of a product is important to Emson's marketing of its products in extended markets such as direct response print media, to and through retail outlets and mail order catalogues, and via the Internet.

16.     The use of the "As Seen On TV" logo in connection with products that have been advertised on television capitalizes on consumer awareness of the product created by its DRTV advertising and the resulting enhanced recognition, as DRTV advertised products improves sales in the extended markets and extends the life cycle of the products beyond their television marketing.

17.     In the eyes of retailers and other resellers of "As Seen On TV" products, the "As Seen On TV" status of a product enhances the product's overall consumer appeal and product recognition and increases sales.

18.     Given the impressive visibility that results from substantial advertising of a product "As Seen On TV" via a direct response television commercial, both retailers and non-television direct response marketers have designated specific shelf space and/or departments, or prominent catalog positioning, for "As Seen On TV" products.  In some cases, entire stores are dedicated to "As Seen On TV" products.

**Facts Pertaining to Defendant ASTV Pros**

19.     On information and belief, ASTV Pros imports, offers for sale, and sells in the United States what purport to be various third-party branded products, trading online as As Seen On TV Pros, through the website https://www.asseenontvpros.com/ (the "ASTV Pros Website").

20.     ASTV Pros has displayed the logo below ("ASTV Pros Logo") in connection with the advertisement and offer for sale of products on the ASTV Pros Website, including the counterfeit and infringing products of Defendant, which are the subject of the claims herein:



21.     Among the third-party branded products offered on the ASTV Pros Website are more than 20 Emson products.

**Facts Pertaining to Emson's Products Offered for Sale by ASTV Pros**

22.    Emson has bought, and continues to buy, DRTV advertising and uses the "As Seen On TV" logo with respect to numerous product lines, a number of which ASTV Pros displays on its ASTV Pros Website and purports to offer for sale as genuine Emson products, while fulfilling orders for the Emson products it displays with counterfeit or nonconforming merchandise.

23.    ASTV Pros offers, or has offered, for sale at least the following Emson products on its ASTV Pros Website: Bell+Howell Clever Grip, Bell+Howell Disk Lights, Bell+Howell Flip-Up TacGlasses, Bell+Howell LightBar, Bell+Howell Monster Zapper, Bell+Howell Rechargeable Bionic Trimmer, Bell+Howell TacAmplifier, Bell+Howell TacBat, Bell+Howell TacGlasses, Bell+Howell TacGlasses Night Vision, Bell+Howell TacLight, Bell+Howell TacLight Lantern, Bell+Howell TacLight Pro, Bell+Howell TacVisor, Bell+Howell TacCamera, Bell+Howell TacZoom, BetterBrella, Better Sponge, Car Cane, Gotham Steel Bacon Bonanza, Gotham Steel Electrical Smokeless Grill, Gotham Steel 10-Inch Round Pan, Copper Grill Mat and Bake Mat, NuBrilliance, My Flexible Mirror, Nutri Chopper, Paw Perfect, Robo Twist, Alien Tape, Bell+Howell TriBurst Multi-Directional LED Light, and Bell+Howell Bionic Spotlight.

**PAW PERFECT® Pet Nail Groomers**

24.    Emson has bought DRTV advertising and uses the "As Seen On TV" logo with respect to pet nail groomers which it sells under its registered trademark **PAW PERFECT®**.  A true and correct copy of United States Trademark Registration No. 5,836,200 for the trademark **PAW PERFECT**, registered for *battery-powered pet*

*grooming products, namely, pet nail filers, pet nail trimmers and pet nail grinders* in International Class 8, held in the name of E. Mishan & Sons, Inc. is attached hereto as Exhibit A.

25.     Emson sells **PAW PERFECT®** pet nail groomers throughout the United States directly to consumers through Internet websites, including its own dedicated website, https://trypawperfect.com/, and to nationwide retailers for resale to consumers.

26.     Plaintiff's retail packaging for its **PAW PERFECT®** pet nail groomer is illustrated below and in attached Exhibit B hereto:



27.     The **PAW PERFECT®** pet nail groomer packaging has been registered with the U.S. Copyright Office as U.S. Copyright Registration No. VA 2-147-555, which duly and lawfully issued to E. Mishan & Sons, Inc., on April 17, 2019 ("**PAW PERFECT Copyright Registration**").   A true and correct copy of said registration with deposit is

attached hereto as Exhibit C.  The **PAW PERFECT** Copyright Registration is original and protectable subject matter.

28.     The trade dress of the **PAW PERFECT** pet nail groomer comprises a white generally cylindrical body, a removable smoke-gray protective cap that covers a rotating abrasive head, a red power button with paw imprint located at the center of the white generally-cylindrical body, a black rubber textured grip surrounding the portion of the body intended to be held by the user, and a white battery compartment cap at the base of the unit (the "**PAW PERFECT** Trade Dress") adopted by Emson to distinguish the **PAW PERFECT**® product from other pet nail groomers in the marketplace.  The **PAW PERFECT** Trade Dress is an arbitrary, non-functional and inherently distinctive design which distinguishes the **PAW PERFECT**® device from other pet nail groomer products in the marketplace.  The **PAW PERFECT**® Trade Dress is not functional.  The design features embodied by the **PAW PERFECT**® Trade Dress are not essential to its function of the product, do not make the product cheaper or easier to manufacture, and do not affect the quality of the product.  The design of the **PAW PERFECT**® Trade Dress is not a competitive necessity.  The design of the **PAW PERFECT**® Trade Dress has acquired a secondary meaning as an indicium of source.

29.     Emson has incurred significant expense in advertising the **BELL+HOWELL PAW PERFECT**® pet nail groomer via an infomercial on national cable channels and television broadcast channels.

30.     The ASTV Pros Website advertises Emson's **PAW PERFECT**® pet nail groomers for sale, displaying the product as shown below and in attached Exhibit D hereto:



Home > Animals and Pets  >  Bell and Howell Paw Perfect Dog Nail Trimmer



Bell and Howell Paw Perfect Dog Nail Trimmer - As Seen On TV

31.    However, the product received in response to an online order for the above product from the ASTV Pros Website was not a genuine **PAW PERFECT®** pet nail groomer but rather a counterfeit product closely simulating the trade dress of the genuine product and applying a counterfeit **PAW PERFECT®** trademark as shown below and in attached Exhibit E hereto:



32.     ASTV Pros sells and distributes the counterfeit **PAW PERFECT®** product in a package which is substantially identical to Emson's copyrighted packaging for its **PAW PERFECT®** product, and it bears the false designation of the As Seen On TV logo.

33.     The counterfeit product simulates the trade dress of the genuine **PAW PERFECT®** product.

34.     ASTV Pros uses the false representation of As Seen On TV on and in connection with its offer for sale, sale and advertisements of the counterfeit **PAW PERFECT®** product.

35.     Upon information and belief, the counterfeit **PAW PERFECT®** product has never been advertised on television, or any such advertising has been miniscule.

36.     Consequently, ASTV Pros has engaged in trademark infringement, trademark counterfeiting, false designations of origin, and false or misleading representations of fact in violation of the federal Lanham Act; infringement under the federal Copyright Act; and trade dress infringement, unfair competition, passing off and false advertising in violation of New York law, all in connection with its advertising and sale of purported genuine **PAW PERFECT®** pet nail groomer products.

<u>**CAR CANE®** Automotive Assistance Device</u>

37.     Emson markets and sells in interstate commerce an automotive assistance device for helping persons to enter and exit an automobile under its trademark **CAR CANE**.  A copy of United States Trademark Registration No. 4,897,344 for the trademark **CAR CANE**, registered for *non-mechanized hand-held device for insertion into striker pin*

*opening of vehicle to help a person getting in or out of vehicle* in International Class 12, held in the name of E. Mishan & Sons, Inc. is attached hereto as Exhibit F.

38.     The trade dress of the **CAR CANE®** device comprises a black handle incorporating a red grip, the black handle and red grip having a distinctive shape, comprising an arbitrary, non-functional and inherently distinctive design (the "**CAR CANE** Trade Dress") adopted by Emson to distinguish the **CAR CANE®** device from other automotive assistance devices in the marketplace.  The **CAR CANE** Trade Dress is not functional.  The design features embodied by the **CAR CANE** Trade Dress are not essential to its function of the product, do not make the product cheaper or easier to manufacture, and do not affect the quality of the product.  The design of the **CAR CANE** Trade Dress is not a competitive necessity.  The design of the **CAR CANE** Trade Dress has acquired a secondary meaning as an indicium of source.

39.     Emson is the sole owner of all right, title, and interest in United States Trademark Registration No. 4,924,669 (the "'669 Registration") for the colors black and red applied in combination to the surface of a non-mechanized hand-held device in the nature of a handle adapted for insertion into the striker pin opening of vehicle to help a person getting in or out of vehicle, (the "**CAR CANE** Design Trademark") as shown in the registration. The '669 Registration duly and validly issued on March 22, 2016.  A true and correct copy of the '669 Registration is attached hereto as Exhibit G.

40.     Emson has incurred significant expense in advertising the **CAR CANE®** device via an infomercial on national cable channels and television broadcast channels.

41.     As a result of Emson's extensive advertising and promotion of the **CAR CANE®** product, the **CAR CANE** Trade Dress, **CAR CANE** Design Trademark, and **CAR**

**CANE** Word Trademark have become widely and favorably known to the public and have become recognized as identifying a particular source of the product.

42.    Emson's **CAR CANE®** product  is illustrated below and in attached Exhibit H hereto:



43.    The ASTV Pros Website advertises Emson's **CAR CANE®** product for sale, displaying the product as shown below and in attached Exhibit I hereto:



44.    However, the product received in response to an online order for the above product from the ASTV Pros Website was not a genuine **CAR CANE®** product but rather a counterfeit product, delivered only in an unmarked mailing envelope, as shown below and in attached Exhibit J hereto:



45.    The counterfeit product simulates the trade dress of the genuine **CAR CANE®** product.

46.    ASTV Pros uses the false representation of As Seen On TV on and in connection with its offer for sale, sale and advertisement of the counterfeit **CAR CANE** product.

47.    Upon information and belief, the counterfeit **CAR CANE** product has never been advertised on television, or any such advertising has been miniscule.

48.    Consequently, ASTV Pros has engaged in trademark infringement, trademark counterfeiting, false designations of origin, and false or misleading representation of fact in violation of the federal Lanham Act; and trade dress infringement, unfair competition, passing off, and false advertising in violation of New York law, all in connection with its advertising and sale of purported genuine **CAR CANE®** products.

## **BELL+HOWELL® TACLIGHT™** Flashlights

49.    Emson sells **BELL+HOWELL® TACLIGHT™** flashlights throughout the United States directly to consumers through Internet websites, including its own dedicated website, https://www.trytaclight.com, and to nationwide retailers for resale to consumers.

50.    Emson is the owner of the trademark **TACLIGHT** and has used the **TACLIGHT** trademark in interstate commerce for lighting products, including flashlights, since as early as 2016.

51.    The **BELL+HOWELL** Mark used on the packaging, websites, and advertising for Emson's **TACLIGHT™** flashlights is the subject of United States Trademark Registration No. 5,669,096, registered for, *inter alia*, *flashlights, lanterns* in International

Class 11, held in the name of BHH, a true and correct copy of which is attached hereto as Exhibit K; and United States Trademark Registration No. 5,631,839, registered for, *inter alia*, *flashlights, lanterns* in International Class 11, also held in the name of BHH, a true and correct copy of which is attached hereto as Exhibit L.

52.     Emson's **BELL+HOWELL®** **TACLIGHT™** flashlights are advertised and sold in connection with the registered trademark **EMSON®** which is the subject of United States Trademark Registration No. 5,516,574, registered for, *inter alia*, *flashlights* in International Class 11, held in the name of E. Mishan & Sons, Inc. a true and correct copy of which is attached hereto as Exhibit M.

53.     Emson has incurred significant expense in advertising the **BELL+HOWELL®** **TACLIGHT™** flashlight via an infomercial on national cable channels and television broadcast channels.

54.     As a result of Emson's extensive advertising and promotion of the **BELL+HOWELL®** **TACLIGHT™** flashlights, Emson's **TACLIGHT** Trademark has become widely and favorably known to the public, has become recognized as identifying a particular source of the product, and the **TACLIGHT** Trademark has acquired secondary meaning.

55.     Emson's retail packaging for its **BELL+HOWELL®** **TACLIGHT™** flashlights is illustrated below and in attached Exhibit N hereto:



56.    The   ASTV   Pros   Website   advertises   genuine   **BELL+HOWELL®**

**TACLIGHT™** flashlights for sale, displaying the product as shown below and in attached

Exhibit O hereto:



Home > Electronics  >  Bell and Howell Tac Light - As Seen On TV



Bell and Howell Tac Light - As Seen On TV

57.     However, the product received in response to an online order for the above product from the ASTV Pros Website was not a genuine **BELL+HOWELL® TACLIGHT™** flashlight but rather a counterfeit product, delivered only in an unmarked box, as shown below and in attached Exhibit P hereto:



58.     ASTV Pros uses the false representation of As Seen On TV on and in connection with its offer for sale, sale and advertisements of the counterfeit **BELL+HOWELL® TACLIGHT™** flashlight.

59.     Upon information and belief, the counterfeit **BELL+HOWELL® TACLIGHT™** flashlight has never been advertised on television, or any such advertising has been miniscule.

60.     Consequently, ASTV Pros has engaged in trademark infringement, trademark counterfeiting, false designations of origin, and false or misleading representation of fact in violation of the federal Lanham Act; and unfair competition, passing off and false advertising in violation of New York law, all in connection with its

advertising and sale of purported genuine **BELL+HOWELL® TACLIGHT™** flashlight products.

**BELL+HOWELL® TACLIGHT™ PRO** Flashlights

61.     Emson sells **BELL+HOWELL® TACLIGHT™ PRO** flashlights throughout the United States directly to consumers through Internet websites, including its own dedicated website, https://www.taclightpro.com/, and to nationwide retailers for resale to consumers.

62.     Emson has incurred significant expense in advertising the **BELL+HOWELL® TACLIGHT™ PRO** flashlights via an infomercial on national cable channels and television broadcast channels.

63.     As a result of Emson's extensive advertising and promotion of the **BELL+HOWELL® TACLIGHT™ PRO** flashlights, Emson's **TACLIGHT PRO** Trademark has become widely and favorably known to the public, has become recognized as identifying a particular source of the product and the **TACLIGHT PRO** Trademark has acquired a secondary meaning.

64.     Emson's **BELL+HOWELL® TACLIGHT™ PRO** flashlight is illustrated below and in attached Exhibit Q hereto:



65.    The    ASTV    Pros    Website    advertises    genuine    **BELL+HOWELL®**
**TACLIGHT™ PRO** flashlights  for  sale,  displaying  the  product  as  shown  below  and  in
attached  Exhibit  R  hereto:



Home > Hardware >  Bell and Howell Tac Light Pro - As Seen On TV Extendable Flashlight & Lantern In One



Bell and Howell Tac Light Pro - As Seen On TV Extendable Flashlight &
Lantern In One

**Bell and Howell Tac Light Pro
Flashlight & Lantern In One**

★★★★★ 0 Review(s)

**On sale:   $9.95**
Retail Price:  $19.95
You Save:   $10.00   (50%)

Item usually ships out within 48 hours    Fre

**Quantity**

[ 1 ]    🛒 **ADD TO CART**

👍 Like   5 people like this. Sign
Up to see what your
friends like.

66.     However, the product received in response to an online order for the above product from the ASTV Pros Website was not a genuine **BELL+HOWELL® TACLIGHT™ PRO** flashlight but rather a third-party product, delivered in damaged, previously-opened packaging, as shown below and in attached Exhibit S hereto:



67.     Upon information and belief, the counterfeit **BELL+HOWELL® TACLIGHT™ PRO** product has never been advertised on television, or any such advertising has been miniscule.

68.     ASTV Pros uses the false representation of As Seen On TV on and in connection with its offer for sale, sale and advertisements of the counterfeit **BELL+HOWELL® TACLIGHT™ PRO** flashlight.

69.     Consequently, ASTV Pros has engaged in trademark infringement, trademark counterfeiting, false designations of origin, and false or misleading representation of fact in violation of the federal Lanham Act; and unfair competition,

passing off and false advertising in violation of New York law, all in connection with its advertising and sale of purported genuine **BELL+HOWELL® TACLIGHT™ PRO** flashlight products.

### **BELL+HOWELL® TACLIGHT™** Lanterns

70.     Emson sells **BELL+HOWELL® TACLIGHT™** lanterns throughout the United States directly to consumers through Internet websites, including its own dedicated website, https://www.taclightlantern.com/, and to nationwide retailers for resale to consumers.

71.     Emson's **BELL+HOWELL® TACLIGHT™** lanterns are advertised and sold in connection with the registered trademark **EMSON®** which is the subject of United States Trademark Registration No. 5,516,574, registered for, *inter alia*, *lanterns for lighting* in International Class 11, held in the name of E. Mishan & Sons, Inc. a true and correct copy of which is attached hereto as Exhibit M.

72.     Emson's **BELL+HOWELL® TACLIGHT™** lanterns television infomercial has been registered with the United States Copyright Office has Copyright Registration No. PA 2-082-400, which duly and lawfully issued to E. Mishan & Sons, Inc., on March 12, 2018 ("**TACLIGHT** Lantern Copyright Registration").   A true and correct copy of said registration is attached hereto as Exhibit T.   Two frames of the deposit that accompanied the application for the **TACLIGHT** Lantern Copyright Registration are reproduced below:





73.    Emson's retail packaging for its **BELL+HOWELL® TACLIGHT™** lantern is illustrated below and in attached Exhibit U hereto:



74.    Emson   has   incurred   significant   expense   in   advertising   the **BELL+HOWELL® TACLIGHT™** lantern via an infomercial on national cable channels and television broadcast channels.

75.    The   ASTV   Pros   Website   advertises   genuine   **BELL+HOWELL®** **TACLIGHT™**   lanterns   for   sale,   also   using   the   trademarks   **BELL+HOWELL®**, **TACLIGHT™**, and **EMSON®** and displaying the product as shown below and in attached Exhibit V hereto:



Home > Hardware >  Bell and Howell Tac Light Lantern - As Seen On TV



Bell and Howell Tac Light Lantern - As Seen On TV

76.    In addition, the ASTV Pros Website uses the two above illustrated frames from Emson's copyrighted **TACLIGHT** lantern television infomercial to advertise its sale of   purported   genuine   **BELL+HOWELL® TACLIGHT™**   lanterns,   as   illustrated   in   the enlarged portion of the image above reproduced from the ASTV Pros Website:



77.    However, the product received in response to an online order for the above product from the As Seen On TV Pros Website was not a genuine **BELL+HOWELL®** **TACLIGHT™** lantern but rather a third-party product, as shown below and in attached Exhibit W hereto:



78.   Upon information and belief, the counterfeit **BELL+HOWELL®
TACLIGHT™** lantern has never been advertised on television, or any such advertising
has been miniscule.

79.   ASTV Pros uses the false representation of As Seen On TV on and in
connection with its offer for sale, sale and advertisements of the counterfeit
**BELL+HOWELL® TACLIGHT™** lantern.

80.   Consequently, ASTV Pros has engaged in trademark infringement,
trademark counterfeiting, false designations of origin, and false or misleading
representations of fact in violation of the federal Lanham Act; infringement under the
federal Copyright Act; and unfair competition, passing off and false advertising in violation
of New York law, all in connection with its advertising and sale of purported genuine
**BELL+HOWELL® TACLIGHT™** lantern products.

**NUTRI CHOPPER™** Handheld Kitchen Slicer

81.     Emson sells handheld kitchen slicers under its trademark **NUTRI CHOPPER™** throughout the United States directly to consumers through Internet websites, including its own dedicated website, https://nutrichopper.com/, and to nationwide retailers for resale to consumers.

82.     Emson owns pending United States Trademark Application No. 88/697,643 for the **NUTRI CHOPPER™** trademark for *"hand operated kitchen appliances . . . for chopping, cutting and shredding food."*

83.     Emson has incurred significant expense in advertising the **NUTRI CHOPPER™** handheld kitchen slicers via an infomercial on national cable channels and television broadcast channels.

84.     As a result of Emson's extensive advertising and promotion of the **NUTRI CHOPPER™** handheld kitchen slicers, Emson's **NUTRI CHOPPER** Trademark has become widely and favorably known to the public, has become recognized as identifying a particular source of the product, and the **NUTRI CHOPPER** Trademark has acquired a secondary meaning.

85.     The retail packaging for the **NUTRI CHOPPER™** handheld kitchen slicers is illustrated below and in attached Exhibit X hereto:



86.    The ASTV Pros Website advertises genuine **NUTRI CHOPPER™** handheld kitchen slicers for sale, displaying the product as shown below and in attached Exhibit Y hereto:



Home > Home and Garden  >  NutriChopper Kitchen Slicer & Chopper



NutriChopper Kitchen Slicer & Chopper - As Seen On TV

87.    However, the product received in response to an online order for the above product from the ASTV Pros Website was not a genuine **NUTRI CHOPPER™** handheld kitchen slicer but rather a knockoff product, delivered only in an unmarked mailing envelope without instructions or any identifying information, as shown below and in attached Exhibit Z hereto:



88.    Upon information and belief, the infringing **NUTRI CHOPPER™** handheld kitchen slicer has never been advertised on television, or any such advertising has been miniscule.

89.    ASTV Pros uses the false representation of As Seen On TV on and in connection with its offer for sale, sale and advertisements of the infringing **NUTRI CHOPPER™** handheld kitchen slicer.

90.    Consequently, ASTV Pros has engaged in false designations of origin and false or misleading representations of fact in violation of the federal Lanham Act; and trademark infringement, unfair competition, passing off and false advertising in violation of New York law, all in connection with its advertising and sale of purported genuine **NUTRI CHOPPER™** handheld kitchen slicer products.

**BELL+HOWELL DISK LIGHTS®** Solar Powered Exterior Lighting

91.     Emson sells **BELL+HOWELL DISK LIGHTS®** solar powered exterior lighting throughout the United States directly to consumers through Internet websites, including the dedicated website, https://disklights.com/, and to nationwide retailers for resale to consumers.

92.     The **BELL+HOWELL DISK LIGHTS** Mark is the subject of United States Trademark Registration No. 5,615,759, registered for *LED landscape lights; solar-powered all-weather lights; solar light fixtures, namely, outdoor solar powered lighting units and fixtures; outdoor lighting, namely, landscape and walkway lighting fixtures* in International Class 11, held in the name of BHH, a true and correct copy of which is attached hereto as Exhibit AA.

93.     The **BELL+HOWELL** Mark used on the packaging for Emson's **BELL+HOWELL DISK LIGHTS®** solar powered exterior lighting is the subject of United States Trademark Registration No. 5,669,096, registered for, *inter alia*, *solar-powered all-weather lights* in International Class 11, held in the name of BHH, a true and correct copy of which is attached hereto as Exhibit K; and United States Trademark Registration No. 5,631,839, registered for, *inter alia*, *solar-powered all-weather lights* in International Class 11, also held in the name of BHH, a true and correct copy of which is attached hereto as Exhibit L.

94.     Emson has incurred significant expense in advertising the **BELL+HOWELL DISK LIGHTS®** via an infomercial on national cable channels and television broadcast channels.

95.     Emson's retail packaging for its **BELL+HOWELL DISK LIGHTS®** solar powered exterior lighting is illustrated below and in attached Exhibit BB hereto:



96.     The retail packaging the **BELL+HOWELL DISK LIGHTS®** solar powered exterior lighting has been registered with the U.S. Copyright Office as U.S. Copyright Registration No. VA 2-096-773, which duly and lawfully issued to E. Mishan & Sons, Inc., on March 29, 2018 ("**DISK LIGHTS** Copyright Registration").  A true and correct copy of said registration with deposit is attached hereto as Exhibit CC.  The **DISK LIGHTS** Copyright Registration is original and protectable subject matter.

97.     The ASTV Pros Website advertises genuine **BELL+HOWELL DISK LIGHTS®** solar powered exterior lighting for sale, displaying the product as shown below and in attached Exhibit DD hereto:



Home > Home and Garden > Bell and Howell Disk Lights - As Seen On TV



Bell and Howell Disk Lights - As Seen On TV Pack of 4

98.     However, the product received in response to an online order for the above product from the ASTV Pros Website was not a genuine **BELL+HOWELL DISK LIGHTS®** solar powered exterior lighting product but rather a knockoff product, delivered in an unmarked mailing envelope without instructions or identifying information, as shown below and in attached Exhibit EE hereto:



99.    Upon information and belief, the counterfeit **BELL+HOWELL DISK LIGHTS®** product has never been advertised on television, or any such advertising has been miniscule.

100.    ASTV Pros uses the false representation of As Seen On TV on and in connection with its offer for sale, sale and advertisements of the counterfeit **BELL+HOWELL DISK LIGHTS®** product.

101.    Consequently, ASTV Pros has engaged in trademark infringement, trademark counterfeiting, false designations of origin, and false or misleading representations of fact in violation of the federal Lanham Act; infringement under the federal Copyright Act; and unfair competition, passing off and false advertising in violation of New York law, all in connection with its advertising and sale of purported genuine **BELL+HOWELL DISK LIGHTS®** solar powered exterior lighting products.

## **BELL+HOWELL® TACGLASSES™** Sunglasses

102.    Emson sells **BELL+HOWELL® TACGLASSES™** sunglasses throughout the United States directly to consumers through Internet websites, including its own dedicated website, https://www.trytacglasses.com/, and to nationwide retailers for resale to consumers.

103.    Emson is the owner of the trademark **TACGLASSES** and has used the **TACGLASSES** trademark on and in connection with eyewear since as early as 2017.

104.    The **BELL+HOWELL** Mark used on the packaging for Emson's **BELL+HOWELL® TACGLASSES™** sunglasses is the subject of United States Trademark Registration No. 5,631,839, registered for, *inter alia*, *sunglasses* in

International Class 9, held in the name of BHH, a true and correct copy of which is attached hereto as Exhibit L and United States Trademark Registration No. 5,669,096, registered for, *inter alia*, *sunglasses* in International Class 9, also held in the name of BHH, a true and correct copy of which is attached hereto as Exhibit K.

105.   Emson has incurred significant expense in advertising **BELL+HOWELL®** **TACGLASSES™** sunglasses via an infomercial on national cable channels and television broadcast channels.

106.   Emson's **TACGLASSES** television infomercial has been registered with the United States Copyright Office under Copyright Registration No. PA 2-082-398, which duly and lawfully issued to E. Mishan & Sons, Inc., on March 12, 2018 ("**TACGLASSES** Copyright Registration").  A true and correct copy of said registration is attached hereto as Exhibit FF.  One frame of the deposit that accompanied the application for the **TACGLASSES** Copyright Registration is reproduced below:



107.   As a result of Emson's extensive advertising and promotion of **BELL+HOWELL®** **TACGLASSES™** sunglasses, Emson's **TACGLASSES™** Trademark has become widely and favorably known to the public, has become recognized as

identifying a particular source of the product, and the **TACGLASSES**™ Trademark has acquired a secondary meaning.

108.   Emson's retail packaging for its **BELL+HOWELL® TACGLASSES**™ sunglasses is illustrated below and in attached Exhibit GG hereto:



109.   The ASTV Pros Website advertises genuine **BELL+HOWELL® TACGLASSES**™ sunglasses for sale, displaying the product as shown below and in attached Exhibit HH hereto:



Home > Apparel and Accessories > Bell and Howell Tac Glasses - As Seen On TV



Bell and Howell Tac Glasses - As Seen On TV



**Bell and Howell Tac Glasses - As Seen On TV**

★★★★★  1 Review(s)

**On sale:  $14.95**
Retail Price:  $19.95
You Save:  $5.00  (25%)

Item usually ships out within 48 hours    Free Shipping.

**Quantity**

[ 1 ]    🛒 ADD TO CART

∨ Quantity Pricing

👍 Like  17 people like this. Sign
Up to see what your
friends like.

110.   In addition, the ASTV Pros Website uses the above illustrated frame from Emson's copyrighted **TACGLASSES** television infomercial to advertise its purported sale of genuine **BELL+HOWELL® TACGLASSES™** sunglasses, as follows:



111.   However, the product received in response to an online order for the above product from the ASTV Pros Website was not genuine **BELL+HOWELL® TACGLASSES™** sunglasses but rather a knockoff product, delivered only in an unmarked box without instructions or any identifying information, as shown below and in attached Exhibit II hereto:



112. Upon information and belief, the counterfeit **BELL+HOWELL®
TACGLASSES™** product has never been advertised on television, or any such
advertising has been miniscule.

113. ASTV Pros uses the false representation of As Seen On TV on and in
connection with its offer for sale, sale and advertisements of the counterfeit
**BELL+HOWELL® TACGLASSES™** sunglasses.

114. Consequently, ASTV Pros has engaged in trademark infringement,
trademark counterfeiting, false designations of origin, and false or misleading
representations of fact in violation of the federal Lanham Act; infringement under the
federal Copyright Act; and unfair competition, passing off and false advertising in violation
of New York law, all in connection with its advertising and purported sale of genuine
**BELL+HOWELL® TACGLASSES™** sunglasses.

### **BELL+HOWELL® FLIP-UP TACGLASSES™** Sunglasses

115. Emson sells **BELL+HOWELL® FLIP-UP TACGLASSES™** sunglasses
throughout the United States directly to consumers through Internet websites, including
their own dedicated website, https://www.flipupglasses.com/, and to nationwide retailers
for resale to consumers.

116. The **BELL+HOWELL** Mark used on the packaging and advertising for
Emson's **BELL+HOWELL® FLIP-UP TACGLASSES™** sunglasses is the subject of
United States Trademark Registration No. 5,631,839, registered for, *inter alia*, *sunglasses*
in International Class 9, held in the name of BHH, a true and correct copy of which is
attached hereto as Exhibit L and United States Trademark Registration No. 5,669,096,

registered for, *inter alia*, *sunglasses* in International Class 9, also held in the name of BHH, a true and correct copy of which is attached hereto as Exhibit K.

117. Emson has incurred significant expense in advertising the **BELL+HOWELL® FLIP-UP TACGLASSES™** sunglasses via an infomercial on national cable channels and television broadcast channels.

118. Emson's **BELL+HOWELL® FLIP-UP TACGLASSES™** television infomercial has been registered with the United States Copyright Office under Copyright Registration No. PAu 3-922-987, which duly and lawfully issued to E. Mishan & Sons, Inc., on June 27, 2018 ("**FLIP-UP TACGLASSES** Copyright Registration").  A true and correct copy of said registration is attached hereto as Exhibit JJ.  Two frames of the deposit that accompanied the application for the **FLIP-UP TACGLASSES** Copyright Registration are reproduced below:

 

119. The landing page for Emson's dedicated website for its **BELL+HOWELL® FLIP-UP TACGLASSES™** sunglasses displays the **FLIP-UP TACGLASSES™** product as shown below and in attached Exhibit KK hereto:



120.   The ASTV Pros Website advertises genuine **BELL+HOWELL® FLIP-UP TACGLASSES™** sunglasses for sale, displaying the product as shown below and in attached Exhibit LL hereto:



Home > Apparel and Accessories > Bell and Howell Flip-Up Tac Glasses



Bell and Howell Flip-Up Tac Glasses - As Seen On TV Flip Up
Sunglasses

121.   In addition, the ASTV Pros Website uses the two above-illustrated frames from Emson's copyrighted **FLIP-UP TACGLASSES** television infomercial both on the reproduction of Emson's product packaging and separately to advertise its purported sale of genuine **BELL+HOWELL® FLIP-UP TACGLASSES™** sunglasses on its website, as follows:



122.   Consequently, ASTV Pros has engaged in infringement under the federal Copyright Act in connection with its advertising and purported sale of genuine **BELL+HOWELL® FLIP-UP TACGLASSES™** sunglasses.

**BELL+HOWELL®** Amplifier **TACAMPLIFIER**™ Sound

123.   Emson sells **BELL+HOWELL® TACAMPLIFIER**™ sound amplifiers throughout the United States directly to consumers through Internet websites, including

its own dedicated website, https://www.buytacamp.com/, and to nationwide retailers for resale to consumers.

124.   Emson owns the trademark **TACAMPLIFIER** and has used the **TACAMPLIFIER** mark on and/or in connection with sound amplifiers since as early as 2018.

125.   Emson's **BELL+HOWELL® TACAMPLIFIER** sound amplifier is advertised and sold in connection with the registered trademark **BELL+HOWELL®**, which is the subject of United States Trademark Registration No. 4,621,979 registered for, *inter alia*, *sound amplifiers* in International Class 9, held in the name of BHH LLC, a true and correct copy of which is attached hereto as Exhibit MM; and United States Trademark Registration No. 5,669,096 registered for, *inter alia, sound amplifiers,* also held in the name of BHH, a true and correct copy of which is attached hereto as Exhibit K.

126.   Emson's retail packaging for its **BELL+HOWELL® TACAMPLIFIER** sound amplifier is illustrated below and in attached Exhibit NN hereto:



127. Emson has incurred significant expense in advertising the **BELL+HOWELL® TACAMPLIFIER™** product via an infomercial on national cable channels and television broadcast channels.

128. The ASTV Pros Website advertises genuine **BELL+HOWELL® TACAMPLIFIER™** sound amplifiers for sale, also using the trademarks **BELL+HOWELL®** and **TACAMPLIFIER™** and displaying the product as shown below and in attached Exhibit OO hereto:

Home > Electronics  >  Bell & Howell Tac Amplifier - As Seen On TV



Bell & Howell Tac Amplifier - As Seen On TV

129. However, the product received in response to an online order for the above product from the As Seen On TV Pros Website was not a genuine **BELL+HOWELL® TACAMPLIFIER™** but rather a third-party product, as shown below and in attached Exhibit PP hereto:



130.   Upon   information   and   belief,   the   counterfeit   **BELL+HOWELL®**
**TACAMPLIFIER™** sound amplifier has never been advertised on television, or any such
advertising has been miniscule.

131.   ASTV Pros uses the false representation of As Seen On TV on and in
connection   with   its   offer   for   sale,   sale   and   advertisements   of   the   counterfeit
**BELL+HOWELL® TACAMPLIFIER** product.

132.   Consequently,   ASTV Pros has engaged in trademark infringement,
trademark   counterfeiting,   false   designations   of   origin,   and   false   or   misleading
representations of fact in violation of the federal Lanham Act; and unfair competition,
passing off and false advertising in violation of New York law, all in connection with its
advertising and sale of purported genuine **BELL+HOWELL® TACAMPLIFIER** products.

### **BETTERBRELLA®** Umbrella

133.   Emson sells the **BETTERBRELLA®**, an umbrella with reverse open/close
technology, throughout the United States directly to consumers through Internet websites,

including its own dedicated website, https://www.betterbrella.com/, and to nationwide retailers for resale to consumers.

134.    Emson's **BETTERBRELLA®** umbrella is advertised and sold in connection with its registered trademark **BETTERBRELLA®**, which is the subject of United States Trademark Registration No. 5,261,179 registered for *umbrellas* in International Class 18, held in the name of E. Mishan & Sons, Inc., a true and correct copy of which is attached hereto as Exhibit QQ.

135.    The landing page for Emson's dedicated website for its **BETTERBRELLA®** umbrella displays Emson's **BETTERBRELLA®** product as shown below and in attached Exhibit RR hereto:



136.    Emson has incurred significant expense in advertising the **BETTERBRELLA®** umbrella via an infomercial on national cable channels and television broadcast channels.

137.   The ASTV Pros Website advertises genuine **BETTERBRELLA®** umbrellas for sale, also using the trademark **BETTERBRELLA®** and displaying the product as shown below and in attached Exhibit SS hereto:

Home > Hardware > Better Brella - As Seen On TV Inverted Umbrella



Better Brella - As Seen On TV Inverted Umbrella

138.   However, the product received in response to an online order for the above product from the As Seen On TV Pros Website was not a genuine **BETTERBRELLA®** but rather a third-party product, as shown below and in attached Exhibit TT hereto:



139.   Upon information and belief, the counterfeit **BETTERBRELLA®** product has never been advertised on television, or any such advertising has been miniscule.

140.   ASTV Pros uses the false representation of As Seen On TV on and in connection with its offer for sale, sale and advertisements of the counterfeit **BETTERBRELLA®** product.

141.   Consequently, ASTV Pros has engaged in trademark infringement, trademark counterfeiting, false designations of origin, and false or misleading representations of fact in violation of the federal Lanham Act; and unfair competition, passing off and false advertising in violation of New York law, all in connection with its advertising and sale of purported genuine **BETTERBRELLA®** products.

## COUNT I - Trademark Infringement and Counterfeiting
### (15 U.S.C. § 1114)

142.   Plaintiffs reallege and incorporate by reference each of paragraphs 1 through 141 above, as if fully set forth herein.

143.   Plaintiffs assert this claim of trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1114 based upon ASTV Pros' intentional and willful copying of (a) Registration No. 5,836,200 for the mark **PAW PERFECT**; (b) Registration No. 4,897,344 for the mark **CAR CANE**; (c) Registration No. 4,621,979 for the mark **BELL+HOWELL**; (d) Registration No. 5,669,096 for the mark **BELL+HOWELL**; (e) Registration No. 5,631,839 for the mark **BELL+HOWELL**; (f) Registration No. 5,615,759 for the mark **BELL+HOWELL DISK LIGHTS**; (g) Registration No. 5,516,574 for the mark **EMSON**; and (h) Registration No. 5,261,179 for the mark **BETTERBRELLA** (collectively, the "Registrations").

144.   Plaintiffs own valid and protectable rights in their respective Registrations.

145.   ASTV Pros has advertised products using trademarks that are identical copies of the trademarks protected by the Registrations and used by or for Plaintiffs.

146.   ASTV Pros has no license from Plaintiffs to engage in the promotion or sale of Plaintiffs' products or to use the trademarks protected by the Registrations.

147.   ASTV Pros' use of the trademarks protected by the Registrations is likely to cause confusion, mistake or deception among purchasers.

148.   ASTV Pros' infringement and counterfeiting of each of the trademarks protected by the Registrations has been deliberate and willful.

149.   Plaintiffs are entitled to an injunction to stop the irreparable injuries caused by the infringement and counterfeiting of each of the trademarks protected by the Registrations complained of herein.

150.   Plaintiffs are entitled to recover (1) Defendant's profits, (2) any damages sustained by Plaintiffs, and (3) the costs of the action under 15 U.S.C. § 1117(a) and, subject to the Court's discretion, damages may be trebled and, in exceptional cases the Court may award reasonable attorney fees to the prevailing party.

151.   Plaintiffs are entitled to elect either trebled actual damages plus attorneys' fees under 15 U.S.C. § 1117(b), or statutory damages under 15 U.S.C. § 1117(c).

152.   In a case of willful counterfeiting such as this, statutory damages are allowable in an amount up to $2,000,000 per registration.

### COUNT II – Copyright Infringement
### (17 U.S.C. § 501)

153.   Emson realleges and incorporates by reference each of paragraphs 1 through 152 above, as if fully set forth herein.

154.   Emson asserts this claim of copyright infringement pursuant to 17 U.S.C. § 501 based upon the intentional copying of the copyrightable subject matter of (a) Copyright Registration No. VA 2-147-555 for Emson's **PAW PERFECT** Package

Copyright; (b) Copyright Registration No. PA 2-082-400 for Emson's **TACLIGHT** Lantern Infomercial Copyright; (c) Copyright Registration No. PA 2-082-398 for Emson's **TACGLASSES** Infomercial Copyright; (d) Copyright Registration No. VA 2-096-773 for Emson's **DISK LIGHTS** Package Copyright; and (e) Copyright Registration PA 3-922-987 for Emson's **FLIP-UP TACGLASSES** Infomercial Copyright (collectively, the "Copyright Registrations").

155. Upon information and belief, ASTV Pros had access to the copyrightable subject matter of each of the Copyright Registrations.

156. Upon information and belief, ASTV Pros directly infringed each of the Copyright Registrations by copying the copyrightable subject matter of each such Copyright Registration in violation of Emson's exclusive rights within the meaning of 17 U.S.C. § 501(a).

157. Due to ASTV Pros' acts of infringement, Emson has suffered substantial damages to its business in an amount to be established at trial.

158. Due to ASTV Pros' acts of infringement, Emson has suffered general and special damages in an amount to be established at trial.

159. Due to ASTV Pros' acts of copyright infringement as alleged herein, ASTV Pros has obtained direct and indirect profits it would not otherwise have realized but for its infringement of each of the Copyright Registrations. As such, Emson is entitled to disgorgement of ASTV Pros' profits directly and indirectly attributable to ASTV Pros' infringement of each of the Copyright Registrations in an amount to be established at trial.

160. Upon information and belief, ASTV Pros' infringement of each of the Copyright Registrations was willful, reckless, and/or in blatant disregard for Emson's

rights as a copyright holder, and as such, Emson it is entitled to exemplary and enhanced statutory damages.

### COUNT III – False Designations of Origin (Trademarks)
### (15 U.S.C. § 1125(a))

161.    Emson realleges and incorporates by reference each of paragraphs 1 through 160 above, as if fully set forth herein.

162.    Emson asserts this claim of trademark infringement of its unregistered trademarks rights pursuant to 15 U.S.C. § 1125(a) based upon ASTV Pros' intentional copying of (a) **TACLIGHT** Common Law Trademark; (b) **TACLIGHT PRO** Common Law Trademark; (c) **NUTRI CHOPPER** Common Law Trademark; (d) **TACGLASSES** Common Law Trademark; (e) **FLIP-UP TACGLASSES** Common Law Trademark; and (f) **TACAMPLIFIER** Common Law Trademark (collectively, the "Common Law Trademarks").

163.    Emson has valid and protectable rights in the Common Law Trademarks.

164.    ASTV Pros has advertised products using trademarks that are identical to the Common Law Trademarks.

165.    ASTV Pros has no license from Emson to engage in the promotion or sale of Plaintiff's products or to use the Common Law Trademarks.

166.    ASTV Pros' use of the Common Law Trademarks is likely to cause confusion, mistake or deception among purchasers.

167.    ASTV Pros' infringement of each of the Common Law Trademarks has been deliberate and willful.

168.    Emson is entitled to an injunction to stop the irreparable injuries caused by the infringement of the Common Law Trademarks complained of herein.

169.   Emson is entitled to recover (1) Defendant's profits, (2) any damages sustained by Emson, and (3) the costs of the action under 15 U.S.C. § 1117(a) and, subject to the Court's discretion, damages may be trebled and, in exceptional cases, the Court may award reasonable attorney fees to the prevailing party.

### COUNT IV – False Designations of Origin (Trade Dress)
#### (15 U.S.C. § 1125(a))

170.   Emson realleges and incorporates by reference each of paragraphs 1 through 169 above, as if fully set forth herein.

171.   Emson asserts this claim of trade dress infringement of its unregistered trade dress rights pursuant to 15 U.S.C. § 1125(a) based upon ASTV Pros' intentional copying of (a) the **PAW PERFECT** Trade Dress; and (b) the **CAR CANE** Trade Dress (collectively, the "Trade Dress").

172.   Emson has valid and protectable rights in the Trade Dress.

173.   ASTV Pros has advertised products using identical copies of the Trade Dress.

174.   ASTV Pros has no license from Emson to engage in the promotion or sale of Emson's products or to use the Trade Dress.

175.   ASTV Pros' use of the Trade Dress is likely to cause confusion, mistake or deception among purchasers.

176.   ASTV Pros' infringement of the Trade Dress has been deliberate and willful.

177.   Emson is entitled to an injunction to stop the irreparable injuries caused by the infringement of the Trade Dress complained of herein.

178.   Emson is entitled to recover (1) Defendant's profits, (2) any damages sustained by Emson, and (3) the costs of the action under 15 U.S.C. § 1117(a) and,

subject to the Court's discretion, damages may be trebled and, in exceptional cases, the Court may award reasonable attorney fees to the prevailing party.

## COUNT V - False Advertising
### (15 U.S.C. 1125(a)(1)(B))

179.    Emson realleges and incorporates by reference each of paragraphs 1 through 178, above, as if fully set forth herein.

180.    This is a claim for false or misleading representations of fact arising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C § 1125(a)(1)(B).

181.    The offer for sale and sale of ASTV Pros' products in interstate commerce bearing representations that they are "As Seen On TV" and/or under the name "As Seen On TV Pros," when, upon information and belief, they have not been advertised on television, falsely and misleadingly describes the nature, characteristics or qualities of ASTV Pros' products.  These claims are literally false or alternatively are likely to mislead or confuse consumers into buying ASTV Pros' products believing that they are Emson's products that were advertised on television.

182.    ASTV Pros' false or misleading representations of fact are material misrepresentations and injure Emson, its customers and consumers.

183.    ASTV Pros' advertisement of its products as "As Seen On TV" and use of the name "As Seen On TV Pros" and ASTV Pros Logo in connection with the advertisement and sale of its products are material misrepresentations intended to, and which do, influence the purchasing decisions of prospective purchasers.

184.    Due to the widespread exposure of Emson's television infomercials to the public, ASTV Pros' claim that its products are "As Seen On TV" products has a strong tendency to deceive a substantial part of the relevant consuming public who are

interested in purchasing genuine "As Seen On TV" products into believing that ASTV Pros' products are those which has been advertised on television, when in fact they have not been.  As such, ASTV Pros' false or misleading representations of fact will have a material adverse effect on the purchasing decision of the relevant consuming public.

185.   As a direct and proximate result of ASTV Pros' false or misleading representations of fact concerning its products on the ASTV Pros' Website in commerce as herein alleged, Emson has suffered and will continue to suffer damages by a diversion of sales in an amount that is presently unknown but which will be determined at trial.

186.   ASTV Pros' conduct as herein alleged has caused, and unless restrained and enjoined will continue to cause, immediate and irreparable harm to Emson, such as a lessening of its goodwill, which cannot be fully compensable in monetary damages and for which Emson has no adequate remedy at law.  Emson is therefore entitled to preliminary and permanent injunctive relief preventing ASTV Pros from continuing to refer to its products as "As Seen on TV" products and from continuing to use the name "As Seen On TV Pros" and ASTV Pros Logo.

187.   Upon information and belief, Emson alleges that ASTV Pros engaged in the foregoing conduct knowingly and willfully, intending to confuse, deceive and materially influence the public by false or misleading representations of fact.  ASTV Pros' conduct constitutes a willful and extraordinary violation of Section 43(a) of the Lanham Act and is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. §1117, entitling Emson to recover additional damages, reasonable attorneys' fees, and costs of this action.

### COUNT VI - Trademark Infringement under New York Common Law

188.    Plaintiffs reallege and incorporate by reference each of paragraphs 1 through 187 above, as if fully set forth herein.

189.    Plaintiffs assert this claim of trademark infringement in violation of New York common law based ASTV Pros' intentional and willful use of counterfeits, reproductions, copies, or colorable imitations of Plaintiffs' Trademarks pled herein in connection with the sale, offering for sale, distribution, or advertising of counterfeit Plaintiffs' products.

190.    ASTV Pros' use of Plaintiffs' Trademarks, without consent, constitutes trademark infringement in violation of New York common law, in that, among other things, such use is likely to cause confusion, deception, and mistake among purchasers and prospective purchasers as to the source, approval, or sponsorship of Plaintiffs' products advertised on the ASTV Pros' Website.

191.    As a result of ASTV Pros' aforesaid infringing acts, Plaintiffs have been damaged and have suffered, and will continue to suffer, damages in an amount to be determined at trial.  ASTV Pros' infringing acts entitle Plaintiffs to damages that will fairly and adequately compensate them for losses suffered and for all of ASTV Pros' profits derived from its unlawful conduct.  In addition, Plaintiffs are entitled to an award of their reasonable attorneys' fees.

192.    ASTV Pros' aforesaid infringing acts have caused and, unless enjoined by this Court, will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.  Plaintiffs are therefore entitled to preliminary and permanent injunctions enjoining and restraining ASTV Pros from the use of Plaintiffs' Trademarks.

**COUNT VII – Trade Dress Infringement under New York Common Law**

193.   Emson realleges and incorporates by reference each of paragraphs 1 through 192 above, as if fully set forth herein.

194.   Emson asserts this claim of trade dress infringement in violation of New York common law based on ASTV Pros' intentional and willful use of counterfeits, reproductions, copies, or colorable imitations of Emson's Trade Dress pled herein in connection with the sale, offering for sale, distribution, or advertising of counterfeits or knockoffs of Emson's products.

195.   ASTV Pros intentionally and willfully copied (a) the **PAW PERFECT** Trade Dress; and (b) the **CAR CANE** Trade Dress (collectively, the "Trade Dress").

196.   ASTV Pros' use of Emson's Trade Dress, without Emson's consent, constitutes trade dress infringement in violation of New York common law, in that, among other things, such use is likely to cause confusion, deception, and mistake among purchasers and prospective purchasers as to the source, approval, or sponsorship of Emson's products advertised on the ASTV Pros' Website.

197.   As a result of ASTV Pros' aforesaid infringing acts, Emson has been damaged and has suffered, and will continue to suffer, damages in an amount to be determined at trial.  ASTV Pros' infringing acts entitles Emson to damages that will fairly and adequately compensate it for losses suffered and for all of ASTV Pros' profits derived from its unlawful conduct.  In addition, Emson is entitled to an award of its reasonable attorneys' fees.

198.   ASTV Pros' aforesaid infringing acts have caused and, unless enjoined by this Court, will continue to cause irreparable injury to Emson for which Emson has no

adequate remedy at law.   Emson is therefore entitled to preliminary and permanent injunctions enjoining and restraining ASTV Pros from the use of Emson's Trade Dress.

## **COUNT VIII – Passing Off under New York Common Law**

199.   Plaintiffs reallege and incorporate by reference each of paragraphs 1 through 198 above, as if fully set forth herein.

200.   Plaintiffs assert this claim of passing off in violation of New York common law based on ASTV Pros' intentional and willful use of counterfeits, reproductions, copies, or colorable imitations of Plaintiffs' Trademarks and Trade Dress pled herein in connection with the sale, offering for sale, distribution, or advertising of counterfeits of Plaintiffs' products.

201.   ASTV Pros' use of the Plaintiffs' Trademarks and Trade Dress, without consent, constitutes passing off in violation of New York common law, in that, among other things, such use is likely to cause confusion, deception, and mistake among purchasers and prospective purchasers as to the source, approval, or sponsorship of Plaintiffs' products advertised on the ASTV Pros' Website and is likely to deceive and confuse the public into believing that ASTV Pros' infringing products are genuine products of Plaintiffs or are sponsored by, licensed by, endorsed by or otherwise associated with Plaintiffs when in fact ASTV Pros is intentionally and deceptively appropriating the goodwill and reputation associated with Plaintiffs' Trademarks and Trade Dress to deceive purchasers by inducing them to purchase ASTV Pros' counterfeit copies of Plaintiffs' products.

202.   As a result of ASTV Pros' aforesaid infringing acts, Plaintiffs have been damaged and have suffered, and will continue to suffer, damages in an amount to be

determined at trial.  ASTV Pros' infringing acts entitle Plaintiffs to damages that will fairly and adequately compensate them for losses suffered and for all of ASTV Pros' profits derived from its unlawful conduct.  In addition, Plaintiffs are entitled to an award of their reasonable attorneys' fees.

203.    ASTV Pros' aforesaid infringing acts have caused and, unless enjoined by this Court, will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.  Plaintiffs are therefore entitled to preliminary and permanent injunctions enjoining and restraining ASTV Pros from the use of the Plaintiffs' Trademarks and Trade Dress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendant for the following relief:

A.      For infringement of Plaintiffs' Registration No. 5,836,200 for the mark **PAW PERFECT**; Registration No. 4,897,344 for the mark **CAR CANE**; Registration No. 4,924,669 for the **CAR CANE** Design; Registration No. 4,621,979 for the mark **BELL+HOWELL**; Registration No. 5,631,839 for the mark **BELL+HOWELL**; Registration No. 5,669,096 for the mark **BELL+HOWELL**; Registration No. 5,615,759 for the mark **BELL+HOWELL DISK LIGHTS**; Registration No. 5,516,574 for the mark **EMSON**; Registration No. 5,261,179 for the **BETTERBRELLA** Trademark; **TACLIGHT** Common Law Trademark; **TACLIGHT PRO** Common Law Trademark; **NUTRI CHOPPER** Common Law Trademark; **TACGLASSES** Common Law Trademark; **FLIP-UP TACGLASSES** Common Law Trademark; **TACAMPLIFIER** Common Law Trademark;

**PAW PERFECT** Trade Dress; and **CAR CANE** Trade Dress (the "Asserted Trademarks and Trade Dress"), and for related unfair competition:

1.      An Order adjudging Defendant to have willfully infringed the Asserted Trademarks and Trade Dress under 15 U.S.C. § 1125(a) and 1114 as applicable;

2.      Judgment against Defendant for preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116(a), enjoining Defendant and its affiliates, partners, representatives, servants, employees, attorneys and all persons in active concert, privity or participation with Defendant from (a) importing, selling, offering for sale, distributing and/or distributing the products accused of infringing the Asserted Trademarks and Trade Dress, and any products that are not colorably different from those products, and from directly or indirectly infringing the Asserted Trademarks and Trade Dress, (b) using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendant's products or activities are in any way sponsored, licensed, or authorized by or affiliated with or in connection with Plaintiffs, (c) passing off, inducing or enabling others to sell or pass off any products as products of Plaintiffs which products are not made or sold by Plaintiffs, or belonging to Plaintiffs, or under the control, supervision or approval of Plaintiffs, or for sale under the Asserted Trademarks and Trade Dress, or any other mark or trade dress which so resembles the Asserted Trademarks and Trade Dress so as to be likely to cause confusion, deception or mistake, and (d) transporting, moving, returning, or otherwise disposing of, in any manner, any counterfeit products or any other products confusingly similar to Plaintiffs' products, or that otherwise bear, contain, display or utilize any of the

Asserted Trademarks and Trade Dress, any derivation or colorable imitation thereof or likely to detract from the Asserted Trademarks and Trade Dress;

3.      That an accounting be ordered to determine Defendant's profits resulting from its trademark and trade dress infringement, trademark counterfeiting and unfair competition and that Plaintiffs be awarded monetary relief in an amount to be fixed by the Court as it finds just as an equitable remedy and as a remedy under 15 U.S.C. § 1117, including all profits received by Defendant from sales and revenues of any kind made as a result of its infringing actions, said amount to be trebled; all damages sustained by Plaintiffs as a result of Defendant's acts of trademark and trade dress infringement, trademark counterfeiting and unfair competition, and that such damages be trebled;

4.      An order that all infringing articles, packages, printed materials, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed, pursuant to 15 U.S.C. § 1118.

B.      For Defendant's infringement of Plaintiff Emson's U.S. Copyright Registration Nos. VA 2-147-555, PA 2-082-400, VA 2-096-773, PA 2-082-398, and PA 3-922-987 (the "Asserted Copyrights"):

1.      Judgment against Defendant for preliminary and permanent injunctions pursuant to 17 U.S.C. § 502, enjoining Defendant and its affiliates, partners, representatives, servants, employees, attorneys and all persons in active concert, privity or participation with Defendant from (a) importing, selling, offering for sale, distributing and/or distributing the products accused of infringing the Asserted Copyrights and any products that are not colorably different from those products, (b) from directly or indirectly

infringing the Asserted Copyrights, and (c) from using any artwork, photographs, or other materials of Plaintiffs;

2. An Order that all infringing material be impounded and destroyed, pursuant to 17 U.S.C. § 503;

3. An Order adjudging Defendant to have willfully infringed the Asserted Copyrights pursuant to 17 U.S.C. § 504;

4. Ordering Defendant to account to Plaintiff Emson for all gains, profits, and advantages derived by Defendant by its infringement of the Asserted Copyrights or such damages as are proper, and since Defendant intentionally infringed Emson's copyrights, for the maximum allowable statutory damages for each violation, pursuant to 17 U.S.C. § 504;

5. An award of Plaintiff Emson's actual and/or statutory damages for Defendant's copyright infringement in an amount to be determined at trial, pursuant to 17 U.S.C. § 504; and

6. An award of Plaintiff Emson's costs, reasonable attorneys' fees, and disbursements in this action, pursuant to 17 U.S.C. § 505.

C. For Defendant's acts of false advertising, false description of fact, misrepresentation of fact, and related unfair competition:

1. A preliminary and permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, attorneys, representatives, successors, assigns, and all persons, firms, or corporations in active concert or participation with any of them, from: (a) utilizing the "As Seen On TV" logo or any variations thereof including

the "As Seen On TV Pros" name and Logo, in any way in connection with any product not substantially advertised on television, on the packaging or in commercial advertising or marketing therefor; (b) using false advertisements of any kind in connection with the advertisement of Defendant's products; or (c) otherwise competing unfairly with Plaintiffs in any manner; and

2.      An order directing Defendant, and its officers, directors, agents, servants, employees, attorneys, representatives, successors, assigns, and all persons, firms, or corporations in active concert or participation with any of them, to: (a) remove all instances of the "As Seen On TV" logo or any variations thereof including the "As Seen On TV Pros" Logo or any variations thereof, and any statements falsely suggesting that Defendant's products are "As Seen On TV" products; and (b) file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of judgment a report setting forth in detail the manner and form in which the Defendant has complied with the requirements of the injunction and order.

D.      Damages according to maximum allowable for each and every cause of action alleged herein, exclusive of costs, attorneys' fees, and disbursements.

E.      That Plaintiffs be granted prejudgment and post judgment interest.

F.      Such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs E. Mishan & Sons, Inc. and BHH LLC hereby request a trial by jury.

Respectfully submitted,

Dated: September 14, 2020

s/John Zaccaria_____
John Zaccaria, NY Bar No. 2659241
Email: john.zaccaria@notaromichalos.com

Peter Bucci, NY Bar No. 1575802
Email: peter.bucci@notaromichalos.com

Brian Doyle, NY Bar No. 4597449
Email: brian.doyle@notaromichalos.com

Notaro, Michalos & Zaccaria P.C.
100 Dutch Hill Road, Suite 240
Orangeburg, New York 10962
Tel: (845) 359-7700
Fax: (845) 359-7798

*Attorneys for Plaintiffs*
*E. Mishan & Sons, Inc. and*
*BHH LLC*